[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
On October 15, 1996, the plaintiff, Carrie Santangelo Realty Association, LLC, filed a four-count amended complaint against the CT Page 450 City of Derby and against Richard Dunne (Community Development Administrator of the City of Derby), Keith McLiverty (City Treasurer of the City of Derby) and Dina Weissman (President of the Board of Aldermen of the City of Derby) (collectively, the "individual defendants"), in both their official and individual capacities, seeking damages and injunctive relief. The amended complaint alleges a violation of 42 U.S.C. § 1983 arising out of the defendants' actions in depriving the plaintiff of rights, privileges and immunities secured under both the United States Constitution and the Connecticut Constitution, and alleges several state claims.
The first count of the amended complaint alleges that the individual defendants conspired to force the plaintiff to convey its properties to the city under a redevelopment plan without adequate compensation. The gravamen of the first count is threefold. First, the plaintiff alleges that the conveyance was not properly sought under any redevelopment plan but, rather, under the guise of enforcement of delinquent tax obligations which amounted to less than $100,000 on properties worth in excess of $700,000. In conjunction with this allegation, the plaintiff asserts that the City "has historically entered into negotiations and/or payment schedules with delinquent taxpayers in the past." Second, the plaintiff alleges that the conveyance was sought through "public ridicule" and "belittl[ing]" of the plaintiff at a press conference held by the individual defendants. Third, the plaintiff alleges that the conveyance was sought through resolutions "for the commencement of harassing inspections by various municipal officers of the plaintiff's properties." The plaintiff alleges that this practice deviates from prior practice whereby the city would merely report complaints to the owner of property to allow the owner to respond. The defendants' actions, the plaintiff alleges, deprived it of its right to equal protection of the laws by selectively enforcing the tax delinquency and inspection provisions of the Connecticut General Statutes, in violation of 42 U.S.C. § 1983.
The second count of the amended complaint realleges the claims under § 1983, and alleges in addition that at press conferences or in news releases the defendants defamed the plaintiff by "intentionally overstating the amount of taxes that it owed upon the properties and by implying and/or suggesting and/or stating that the plaintiff was not honorable and had violated other promises and/or other obligations to the City of Derby." The plaintiff alleges that the statements were made with knowledge that CT Page 451 they were untruthful and with the intent of defaming the plaintiff's reputation and standing in the community.
The third count realleges the claims under § 1983, and further alleges abuse of process by the defendants in attempting to acquire the plaintiff's properties through tax foreclosure rather than through the "orderly procedures" for redevelopment set out in chapters 130 and 132 of the Connecticut General Statutes. Pursuant to this count, the plaintiff seeks to enjoin the defendants from acquiring the property "under the veil of tax foreclosure proceedings and instead follow the orderly procedures set forth in the Connecticut General Statutes."
The fourth count realleges the claims under § 1983, and further alleges that the actions of the defendants have deprived the plaintiff of any practical use of its properties. Therefore, the plaintiff alleges, it is entitled to compensation for inverse condemnation of its properties.
On March 7, 1997, pursuant to Practice Book § 152, the defendants filed a motion to strike the plaintiff's amended complaint.[1] In compliance with Practice Book § 155, the defendants filed a memorandum of law in support of its motion to strike, setting forth several grounds for the motion. First, the defendants argue that the plaintiff fails to state a cause of action under 42 U.S.C. § 1983 because the section does not provide for injunctive relief in matters involving local taxation, and the plaintiff should have first exhausted its administrative tax remedies before bringing suit under § 1983. The defendants also argue that the plaintiff has failed to properly allege that the defendants' actions deprived it of equal protection of the law. Second, as to the individual defendants, the motion to strike asserts that the individual defendants are entitled to legislative immunity or, in the alternative, governmental immunity. Therefore, the defendants argue, the plaintiff cannot maintain suit against the individual defendants. Third, the defendants argue that the plaintiff has failed to state a claim against the City of Derby because the plaintiff has failed to demonstrate a policy or custom of deprivation of constitutional rights. Fourth, the defendants argue that the plaintiff has failed to allege defamation per se. In addition, because the plaintiff has not alleged any special damages as required at common law, the defendants argue that it has failed to plead simple defamation as well. As to the defamation action against the city, the defendants argue that a municipality cannot be liable for acts committed by its agents CT Page 452 outside the scope of their authority or which involve actual malice or willful misconduct. Fifth, the defendants assert that they acted under legal procedures for the acquisition of property pursuant to their police powers. Therefore, the defendants argue, the plaintiff has failed to state a cause of action for abuse of process. Finally, the defendants argue that the plaintiff has failed to state a cause of action for inverse condemnation because diminution in value is insufficient to establish a taking and because the plaintiff is not entitled to compensation for diminution in value resulting from the exercise of police power.
"The purpose of a motion to strike is to contest . . . the legal sufficiency of the allegations of any complaint . . . to state a claim upon which relief can be granted. In ruling on a motion to strike, the court is limited to the facts alleged in the complaint. The court must construe facts in the complaint most favorably to the plaintiff." (Internal quotation marks omitted.)Faulkner v. United Technologies Corp., 240 Conn. 576, 580,693 A.2d 293 (1997). "`[A]ll well-pleaded facts and those facts necessarily implied from the allegations are taken as admitted."' JLJAssociates, Inc. v. Persiani, 41 Conn. Sup. 79, 80, 550 A.2d 650
(1988), quoting Amodio v. Cunningham, 182 Conn. 80, 82-83,438 A.2d 6 (1980). "If facts provable in the complaint would support a cause of action, the motion to strike must be denied." (Internal quotation marks omitted.) Faulkner v. United Technologies Corp.,
supra, 240 Conn. 580. "The motion's purpose is to permit the court to avoid, where appropriate, a useless trial." (Internal quotation marks omitted.) JLJ Associates Inc. v. Persiani, supra, 41 Conn. Sup. 80. "A `speaking' motion to strike (one imparting facts outside the pleadings) will not be granted." Doe v. Marselle,38 Conn. App. 360, 364, 660 A.2d 871 (1995), rev'd, 236 Conn. 845,675 A.2d 835 (1996). "Insofar as the motion to strike is directed at the entire complaint, it must . . . fail if any of the plaintiff's, claims are legally sufficient." (Internal quotation marks omitted.) Whelan v. Whelan, 41 Conn. Sup. 519, 520, 588 A.2d 251
(1991).
42 U.S.C. § 1983 provides in pertinent part: "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the constitution and laws, shall be liable to the party injured in an action at law." 42 U.S.C. § 1983. "To state a cause of action under § 1983, a plaintiff must allege that CT Page 453 a deprivation of federal rights has occurred under color of any statute, ordinance, regulation, custom or usage. 42 U.S.C. § 1983."Tedesco v. Stamford, 215 Conn. 450, 456, 576 A.2d 1273
(1990). "These two elements denote two separate areas of inquiry: the plaintiff must prove a constitutional or statutory violation and that violation must have been committed by the defendant acting under color of law." (Citations omitted.) Wilson v. Hryniewicz,38 Conn. App. 715, 719-20, 663 A.2d 1073, cert. denied, 235 Conn. 918
(1995), quoting West v. Atkins, 487 U.S. 42, 48 (1987). "Section 1983 is not itself a source of substantive rights, but merely provides a method for vindicating federal rights elsewhere conferred. . . . The first step in any such claim is to identify the specific constitutional right allegedly infringed." Albrightv. Oliver, 510 U.S. 266, 271 (1994). "`[T]he touchstone of [a] § 1983 action against a government body is an allegation that official policy is responsible for a deprivation of rights protected by the Constitution . . . ."' Tedesco v. Stamford,
supra, 215 Conn. 456, quoting Monell v. Department of SocialServices, 436 U.S. 658, 690 (1978). "`[M]unicipal liability under § 1983 attaches where — and only where — a deliberate choice to follow a course of action is made from among various alternatives by city policymakers." Tedesco v. Stamford, supra, 456, quotingPembaur v. Cincinnati, 475 U.S. 469, 483 (1986). `"In addition, § 1983 also authorizes suit for constitutional deprivations visited pursuant to governmental "custom" even though such a custom has not received formal approval through the body's official decision-making channels."' Tedesco v. Stamford, supra, 456, quoting Monellv. Department of Social Services, supra, 436 U.S. 690-91.
The plaintiff's first count alleges that the defendants deprived the plaintiff of equal protection of the laws through selective enforcement of tax and inspection statutes, in violation of 42 U.S.C. § 1983.
Liability in an equal protection case based on selective enforcement `"should depend on proof that (1) the person, compared with others similarly situated, was selectively treated; and (2) that such selective treatment was based on impermissible considerations such a race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person."' (Emphasis omitted.) Schnabel v.Tyler, 230 Conn. 735, 762, 646 A.2d 152 (1994), citing LeClair v.Saunders, 627 F.2d 606, 609-10 (2d Cir. 1980), cert. denied,450 U.S. 959 (1981). The plaintiff has failed to establish a cause of action for selective enforcement against either the individual CT Page 454 defendants or the City of Derby because it has failed to sufficiently allege that it has been selectively treated as compared with others similarly situated. The plaintiff has failed to identify any other delinquent taxpayers who have been permitted to negotiate with the city or who have been given "payment schedules" when requested. Rather, the plaintiff merely vaguely alleges that "the City of Derby has historically entered into negotiations and/or payment schedules with delinquent taxpayers in the past." The plaintiff does not sufficiently allege that it is the only taxpayer against whom delinquent taxes are enforced. SeeFalls v. Town of Dyer Indiana, 875 F.2d 146, 147-48 (7th Cir. 1989) (holding that the trial court erred in granting defendant's motion to dismiss because plaintiff's allegation that he was the only person against whom town ordinance was enforced was equivalent to a bill of attainder). Nor does the complaint plead facts to provide the court with any identification of others similarly situated with which to compare the plaintiff's treatment. SeeLeClair v. Saunders, supra, 627 F.2d 610 (in support of "selective treatment" prong of test, plaintiffs presented evidence that their farm was shut down for having unprotected water supplies while 10 or 11 others were not). Nor does the plaintiff provide allegations as to the nature of the circumstances for granting others leniency in the enforcement of delinquent taxes. See Bianco v. Darien,157 Conn. 548, 254 A.2d 898 (1969) (in zoning case, plaintiffs' assertion that lack of enforcement against owners of properties on an entire street that were in violation of building and zoning regulations violated equal protection was not sufficient to demonstrate "pattern of discrimination" because plaintiffs did not show nature of violations). The plaintiff does not allege others who are similarly situated to the plaintiff who have been granted payment schedules for delinquent taxes owed to the city. The plaintiff has failed to satisfy the first prong of the test for selective enforcement, and thus has failed to sufficiently allege selective enforcement of the tax law.
Similarly, the plaintiff has ambiguously alleged that the individual defendants "arranged for a resolution to be passed by the Board of Aldermen of the City of Derby for the commencement of harassing inspections by various municipal officials of the plaintiff's properties . . . . This deviated from prior practice where any complaints were promptly reported to the owner and responded to." The plaintiff has identified in the complaint neither the details of the resolution, nor any person or entity against whom the existing inspection regulations have been so loosely enforced.[2] The plaintiff does not allege how many CT Page 455 taxpayers are on the rolls of the City of Derby, how many of those on the rolls were current, how many delinquent and similarly situated in dollars of delinquencies to the plaintiff. There is therefore an insufficient factual matrix set out in the complaint. Moreover, "[m]ere laxity in the administration of the law, no matter how long continued, is not and cannot be held to be a denial of the equal protection of the law. To establish arbitrary discrimination, inimical to constitutional equality, there must be something more, something which in effect amounts to an intentional violation of the essential principle of practical uniformity. . . . For the plaintiffs to prevail, they must show a pattern of discrimination consciously practiced." (Citations omitted; internal quotation marks omitted.) Bianco v. Darien, supra,157 Conn. 559-60. The plaintiff has failed to state a cause of action for selective enforcement of any inspection provisions because it has failed to sufficiently allege that it has been selectively treated or that the City of Derby or the individual defendants have engaged in any pattern of discrimination. Therefore, insofar as the plaintiff's claims in count one of the complaint allege selective enforcement of the laws in violation of the equal protection clause, the complaint is not legally sufficient. The motion to strike is granted as to count one.
In count two of the amended complaint, the plaintiff alleges that the defendants defamed the plaintiff by "intentionally overstating the amount of taxes that it owed upon the properties and by implying and/or suggesting and/or stating that the plaintiff was not honorable and had violated other promises and/or other obligations to the City of Derby." The plaintiff further alleges that its inability to sell or lease its properties to generate revenue to pay its taxes is due in part to the city's conduct with respect to the properties.
"Defamation is made up of the twin torts of libel and slander — the one being, in general, written while the other in general is oral." Prosser and Keeton, The Law of Torts § 111, p. 771 (5th Ed. 1984 Supp. 1988); see also Charles Parker Co. v. Silver CityCrystal Co., 142 Conn. 605, 611-12, 116 A.2d 440 (1955). Defamation is "that which tends to injure `reputation' in the popular sense; to diminish the esteem, respect, goodwill or confidence in which the plaintiff is held, or to excite adverse, derogatory or unpleasant feelings or opinions against him. Prosser and Keeton, The Law of Torts § 111, p. 773 (5th ed. 1984 
Supp. 1988). "A prima facie case of defamation is made when the plaintiff demonstrates that: (1) [a] defamatory statement was made CT Page 456 by the defendant; (2) [t]he defamatory statement identifies the plaintiff to a reasonable reader; (3) [t]he defamatory statement is published to a third person; and (4) [t]he plaintiff's reputation suffers injury." (Internal quotation marks omitted.) Lizotte v.Welker, Superior Court, judicial district of Hartford-New Britain at Hartford, Docket No. 365237 (May 17, 1996, Koletsky, J.).
"Slander is defined as an oral defamation of character."Morse v. Sarah Tuxis Residential Services, Superior Court, judicial district of New Haven at Meriden, Docket No. 252481 (September 20, 1996, Gaffney, J.). "An indispensable element of an action of slander is injury to the reputation of the person defamed. . . . The action fails unless that element is present." Urban v.Hartford Gas Co., 139 Conn. 301, 308, 93 A.2d 392 (1952). "Because of the casual way in which slander is uttered, an injured plaintiff must allege and prove his actual special damages unless he can show that the slander has occurred in one of the . . . categories of slanders per se . . . ." See Douglass B. Wright et al., Conn. Law of Torts (3d ed.) § 147, p. 410. "When the defamatory words are actionable per se, the law conclusively presumes the existence of injury to the plaintiff's reputation. He is required neither to plead nor to prove it." (Internal quotation marks omitted.)Torosyan v. Boehringer Ingelheim Pharmaceuticals Inc.,234 Conn. 1, 35, 662 A.2d 89 (1995). Slander becomes actionable per se upon: (1) charging the commission of a crime involving moral turpitude; (2) charging a person with an existing loathsome, contagious disease; (3) charging a woman with being unchaste; (4) charging incompetence or dishonesty in office; (5) statements in derogation of one's existing business; and (6) charging a professional person with general incompetence. See Douglass B. Wright et al., Conn. Law of Torts (3d ed.) § 147, pp. 410-12. "Spoken words are not slanderous per se if they charge no more than specific acts, unless those acts are so charged as to amount to an allegation of general incompetence or lack of integrity." Searles v. Schulman, Superior Court, judicial district of Hartford-New Britain at Hartford, Docket No. 550103 (June 30, 1997, Aurigemma, J.), citing Proto v.Bridgeport-Herald Corp., 136 Conn. 557, 567, 72 A.2d 820 (1950).
The only category of per se slander possibly applicable here is that made in derogation of one's business. "Slander is actionable per se if it charges improper conduct or lack of skill or integrity in one's profession or business and is of such a nature that it is calculated to cause injury to one in his profession or business." Searles v. Schulman, supra, Superior Court, Docket No. 550103, citing Moriarty v. Lippe, 162 Conn. 371, CT Page 457 384, 294 A.2d 326 (1972). As construed in a light most favorable to the plaintiff, the complaint in the present case alleges that the defendants intentionally overstated the amount of taxes that it owed upon the properties, stated that the plaintiff was not honorable and stated that the plaintiff violated obligations owed to the City of Derby. The plaintiff further alleges that this caused it to be unable to sell or lease its properties to raise revenue to pay its taxes. The plaintiff has not properly demonstrated slander per se because it has not alleged that the defendants charged improper conduct or lack of skill or integrity its profession or business, nor has the plaintiff alleged that the statements were of such a nature calculated to cause injury to the plaintiff in its profession or business. The plaintiff has merely alleged that it is unable to sell property to raise revenue for taxes; there is no indication that this is in any way related to the plaintiff's business — i.e., that the plaintiff has been injured in its business of selling or leasing property or some other business purpose. Indeed, it is unclear from the allegations in the complaint the nature of the business in which the plaintiff is engaged. The plaintiff has not sufficiently alleged slander per se.
However, "even if the spoken words are not actionable per se, albeit defamatory, the plaintiff may still recover general damages for harm to reputation. This is allowed where there is proof of special damages for actual pecuniary loss suffered." Morse v.Sarah Tuxis Residential Services, supra, Superior Court, Docket No. 252481, citing Miles v. Perry, 11 Conn. App. 584, 602, 529, A.2d 199 (1987); see also Douglass B. Wright et al., Conn. Law of Torts (3d ed.) § 147, pp. 410, 413. In Morse v. Sarah TuxisResidential Services, Supra, the plaintiff alleged that the defendant defamed her by stating to the defendant's board of directors that the plaintiff neglected her disabled clients by failing to have smoke detectors installed in the clients's home. The court determined that allegations that the plaintiff suffered embarrassment and humiliation, and was "unable to obtain employment in the field of working with the disabled," were sufficient to infer that special damages were sustained by the plaintiff. See Morse v. Sarah Tuxis Residential Services, supra, Superior Court, Docket No. 252481.
The plaintiff in the present action has alleged that because of the defendant's statements it has been unable to sell or rent its properties. Thus, because "`all well-pleaded facts and those facts necessarily implied from the allegations are taken as CT Page 458 admitted'"; JLJ Associates, Inc. v. Persiani, supra, 41 Conn. Sup. 80, quoting Amodio v. Cunningham, supra, 182 Conn. 82-83; the plaintiff's allegations demonstrate a prima facie case of defamation and appear to adequately state or infer special damages.
Nevertheless, the defendants assert in their motion to strike that the individual defendants are entitled to legislative immunity and, therefore, the plaintiff cannot maintain a cause of action against them. As a threshold matter, the court holds the issue of legislative immunity may not be raised on a motion to strike. It must be pled as a special defense and legal insufficiency raised by other procedural means.
In count three of the amended complaint, the plaintiff alleges that the defendants have attempted to acquire its properties by circumventing the "orderly procedures for the acquisition of properties for the purposes of redevelopment" under Chapters 130 and 132 of the General Statutes, and have abused legal process by seeking to acquire the properties under the "veil of tax foreclosure proceedings."
An action for abuse of process lies against any person using `a legal process against another in an improper manner or to accomplish a purpose for which it was not designed.' . . . Because the tort arises out of the accomplishment of a result that could not be achieved by the proper and successful use of process, the Restatement Second (1977) of Torts, § 682, emphasizes that the gravamen of the action for abuse of process is the use of `a legal process . . . against another primarily to accomplish a purpose for which it was not designed . . . .' (Emphasis added.) Comment b to § 682 explains that the addition of `primarily' is meant to exclude liability `when the process is used for the purpose for which it was intended, out there is an incidental motive of spite or an ulterior purpose of benefit to the defendant."' (Citation omitted.) Mozzochi v. Beck, 204 Conn. 490, 494, 529 A.2d 171
(1987); see Restatement Second (1977) of Torts § 682; see generally 1 Am.Jur.2d, Abuse of Process § 1-29.
In the present case, the plaintiff has insufficiently alleged the use of any legal process by the defendants in an improper manner or to accomplish a purpose for which it was not designed. Rather, the plaintiff alleges that it owes the city delinquent taxes and that the defendants have apparently instituted, or plan to institute, proceedings to enforce the payment of those CT Page 459 delinquent taxes.[3] Construing the facts in favor of the plaintiff, and assuming that the defendants have commenced proceedings under General Statutes § 12-171 et seq., it appears that the institution of tax foreclosure proceedings against a delinquent taxpayer is both proper and used for a purpose for which is was designed — to collect delinquent taxes owed on the plaintiff's properties.[4] The fact that the plaintiff alleges that the individual defendants seek to acquire the property because of their dislike for the plaintiff or because they intend ultimately to redevelop it is of no moment. See Restatement Second (1977) of Torts § 682, cmt.b.[5]
Moreover, there is no indication, either from the allegations of the complaint or from examination of the relevant statutes, that the city is required to follow one specific method for the acquisition of property over another. Indeed, under the General Statutes, municipalities enjoy a broad scope of power with regard to acquisition of property. General Statutes § 7-148 (c)(3)(A) provides in pertinent part: "Any municipality shall have the power to . . . [t]ake or . . . condemn . . . real and personal property . . . as the purposes of the municipality or any public use or purpose . . . require . . . ." General Statutes § 7-148 (c)(3)(A). In addition, General Statutes §§ 12-172 and 12-181 specifically provide that a municipality may enforce liens on property through foreclosure. See note 6, supra. Here, as alleged, the defendants apparently seek to acquire the plaintiff's property through tax foreclosure proceedings rather than under the statutory redevelopment process. The plaintiff fails to demonstrate, however, that this process is impermissible or that the defendants are required to proceed under the redevelopment statutes. Although the plaintiff may be entitled, once the property is sold, to recover any excess amounts received by the city on the foreclosure, the allegations of the present action do not state such a claim. Indeed, there is no indication that the defendants have in fact foreclosed on the property; rather, the allegations show that the defendants have indicated that they will pursue foreclosure or have simply commenced preliminary foreclosure proceedings.
Finally, there is no indication that the individual defendants have impermissibly sought foreclosure in abuse of their authority. Although the tax collector is specifically given the authority to "bring suit for the foreclosure of tax liens"; see General Statutes § 12-181; the plaintiff has not alleged that the individual defendants are the municipal agents who have actually brought suit for the foreclosure of its liens. The plaintiff has failed to allege a cause of action for abuse of process, and the defendants' CT Page 460 motion to strike count three of the amended complaint is granted.
The plaintiff alleges in count four of the amended complaint that the defendants' "conduct and statements . . . have prevented the plaintiff from any practical use of its properties and constitutes an inverse condemnation." Therefore, the plaintiff argues, it is entitled to compensation.
"The word `taken' in article first, § 11 of our state constitution means the exclusion of the owner from his private use and possession, and the assumption of the use and possession for the public purpose by the authority exercising the right of eminent domain. . . . Although property may be `taken' without any actual appropriation or physical intrusion . . . there is no taking in a constitutional sense unless the property cannot be utilized for any reasonable and proper purpose . . . as where the economic utilization of the land is, for all practical purposes, destroyed. . . . A constitutional taking occurs when there is a substantial interference with private property which destroys or nullifies its value or by which the owner's right to its use or enjoyment is in a substantial degree abridged or destroyed." (Citations omitted.)Tamm v. Burns, 222 Conn. 280, 284, 610 A.2d 590 (1992); see alsoTextron, Inc. v. Wood, 167 Conn. 334, 346, 355 A.2d 307 (1974) ("there can be a de facto taking of private property by the state without any . . . actual, physical appropriation"). "The situations in which the concept of de facto condemnation applies, however, are limited: Mere planning by a government body in anticipation of the taking of land for public use and preliminary steps taken to accomplish this without the statutory filing of condemnation proceedings and without physical taking is not actionable by the owner." Textron, Inc. v. Wood, supra,167 Conn. 346.
A city has a right to use enforcement procedures to collect its taxes and foreclose overdue tax liens and to discuss whether or not it will use a foreclosure procedure prior to its actually commencing one. When it does so, it does not create an inverse condemnation. The property has a means to call them off by paying the overdue liens and taxes.
To the extent that the defendants' actions or conduct in allegedly pursuing tax foreclosure would arguably otherwise amount to a "condemnation" of the plaintiff's properties by way of a "taking," the plaintiff's complaint fails to state a cause of action for inverse condemnation because, upon the allegations as CT Page 461 viewed in a light most favorable to the plaintiff, it appears as though the defendants have merely planned in anticipation of the taking and, if anything, conducted preliminary steps to accomplish the taking. Certainly the plaintiff has not alleged that the defendants have physically taken its properties. The defendants motion to strike count four of the amended complaint is granted.
FLYNN, J.